The next case today is United States v. Felix Vega-La Torres, Appeal No. 20-1888. Attorney Perez, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. Attorney Frenk-Romerez, I am appearing for the appellant, Felix Vega-La Torres. Judge Thompson, may I please reserve two minutes for rebuttal? Yes. Thank you. And Mr. Perez, before you begin, if I could just ask you a question, which you might want to intertwine with your arguments, that way I won't interrupt you. But I understand that the argument you're making is that whenever the U.S. Attorney's Office stipulates with any defendant, here the Polk Defender's Office, to have a downwards variance, what you're arguing is it's going to be an abuse of discretion if the judge upwardly varies, at least in these gun cases. Am I correct or no? And I won't interrupt you. I welcome any questions from Your Honor. And I will gladly address the question up front. So we're not looking for or asking the court to establish any hard and fast rules that requires an abuse of discretion. What we're saying here is that the District Court's 84-month sentence is unreasonable because the primary factors that the District Court relied on to vary upward were already recommended by the parties. The District Court failed to articulate the specific reasons that remove this case from the heartland of the guideline. This lack of an adequate explanation violates the holding of Ribera de Rios and its progeny and compels reversal here. Counsel, would you please address a factor that seemed very important to the District Court? The District Court judge was well aware of the fact that in justifying his sentence, he had to establish that this was not a mind-run type of offense. And to meet that requirement, he spent some time discussing one of the prior convictions, which he said, which he indicated, suggested, I think, a sort of predisposition to violence on the part of your client because a police officer was dragged from the scene and injured. And that played a particularly important role in his decision. What exactly is your objection to that reliance? Is it because, just to give you some alternatives, is it because there's no reliable factual basis for that determination that your client played that kind of role in that offense? Or is it that somehow that offense is already captured in the district category that controlled the guideline range? I just want to be sure I understand exactly what your objection is to that reliance because it seemed to be so important to the District Court judge. Yes, Your Honor. So our contention with regard to the District Court's Mr. Vega accepted that he had pled guilty to this misdemeanor aiding and abetting conviction. Now, when we look at the transcript beginning at page 60 of the appendix, the District Court says, here's why this case is outside the mind-run. And I think that is what Your Honor just referenced. And the court devotes several pages to images of death and destructions and features of the passing this prior misdemeanor conviction, which to me signals that it was hardly the focusing point of the District Court or that the District Court gave it little consideration. Now, Mr. Vega never accepted that he committed, and maybe this answers Your Honor's questions, that he committed the facts underlying that conviction. He simply accepted in the PSR that he had pled guilty to aiding and abetting in that conduct that gave rise to the conviction. And I think that that is a significant difference because it seems to me like the District Court here conflated the sufficiency of criminal culpability for aiding and abetting with acceptance of the underlying facts. And that to me is what's most troublesome. It's also I don't understand what you mean when you say that. Are you saying that because he pled guilty to the aiding as opposed to carrying out the act itself of dragging the police officer that you think that the court was wrong in putting any emphasis on it? I don't understand. All right, so the fact that- Five minutes remain. Yes, Your Honor, is the short of it. The District Court emphasized these facts as the circumstances that took or that warranted additional weight, the facts underlying that conviction, as opposed to just mere culpability for aiding and abetting, which is what we have here. And I think it's significant because an aiding and abetting conviction on an aiding and abetting theory of liability is significantly broader or encompasses additional conduct that goes beyond the facts that the District Court referenced in this case. So even though we do not raise a standalone claim that the District Court erred in relying on that conviction, we do think that it was not entitled to the weight that it gave it. Does that answer Your Honor? Not really. Well, I share the concern. I mean, I focus on it because it seemed to be, I would suggest, maybe one factor that is not, you would say that the other factors that the trial judge focused on were already, in effect, baked in to the guidelines, the obliteration of serial numbers. I mean, that was already accounted for by the enhancement. This is a crime of violence. Well, of course, it's a crime of violence. That's given. All the ammunition involved. Well, in Rodriguez-Barrios, we said, well, that's basically consistent with this type of offense. There's nothing unusual about that. The fact that he had the status of someone who'd been convicted, well, that's already been baked into the guidelines as well. I focus on this because this seems to be the one factor that is not accounted for by the guideline range. And that's why it seems so important. So it's your position, just because I shared Dr. Thompson's uncertainty about exactly what you're saying. Are you saying that because there was no real exploration of his specific role in the offense, that he may not, even though he was criminally culpable as an aider and abetter for the offense, as a factual matter, he may not have participated in this dragging away of the officer and injuring him? Is that your basic point? Yes, Judge Lepeste. That is the gist of our argument. And let me also emphasize that the reason that there was no further exploration of that point is because the government, in tendering this plea offer that constituted a request for a downwardly variant sentence, may have recognized that it wasn't as serious a consideration as the district court found here. And one other point on this prior conviction, since we're focusing on it, Mr. Vega admittedly did not receive criminal history points for it, but the court never stated that that was a reason why it wasn't going to impose an upward variance for this prior misdemeanor conviction. And even if Mr. Vega had received criminal history points, he still would have been in criminal history category four. So I think that the Heartland concept is sufficiently vast to account for that. And then when you add to that the fact that the bulk of Mr. Vega's convictions were stemmed from episodic homelessness and substance use issues, I think that that shows that there was nothing in this case that really took it up, or that this prior misdemeanor conviction for which Mr. Vega received just a sentence of six months could sufficiently launch this case outside of the guideline range. Okay. Counsel, you mentioned also that improper weight was given to the evidence just a few minutes ago, but isn't the weight of the evidence, Judge Spence, also the sentencing judge's prerogative in a sentencing case, how to weigh the evidence? I apologize. I'm not sure I understand Your Honor's question. What weight is Your Honor referring to, or what evidence is Your Honor referring to? You mentioned a few minutes ago that the evidence was given the weight it was not entitled to be given. But isn't that the judge's determination? It's a factual determination. Right. So yes, but it was objected to here. And when the court stated, well, Mr. Vega dragged this police officer... that even though Mr. Vega was convicted for this misdemeanor on a theory of aiding and abetting, it wasn't enough to show that those facts actually happened. Thank you. Sean, if I can just add another question, please. Thank you. There's a sort of a sense in your briefing, I guess this would be maybe a good lead-in for the government to respond to, that the government is almost in a kind of odd ethical situation here because they agreed on this 51-month sentence. They were willing to accept as important the troubled history of your client, the efforts he had made to rehabilitate himself. They did not portray him as a violent person because of this incident that we're talking about. And yet now on appeal, they are portraying him as a potentially violent person who may have injured a police officer in this other incident. So that there's a... in an effort to justify the judge's decision, they're saying things about the defendant that they did not say before the... it's almost a kind of estoppel type argument. Well, having portrayed the defendant in one way before the trial judge, now here on appeal, they're portraying him as a completely different kind of person. Are they precluded from doing that? Is there something inappropriate or, I guess to put it most starkly, unethical about what they're doing from your point of view? So I think it's definitely problematic that the government takes this stance below and it goes beyond the recognition that there was mitigation. So the government taking the stance below almost disincentivizes the need for further factual development. And then on appeal, the government digs through the record and tries to unexplored prior convictions to paint our client as this violent individual. And maybe the case law solves this in Garcia Perez and Rivera-Rios and Carrasquillo-Sanchez, the government tried to justify an otherwise unexplained sentence by pointing to aspects of the record that the district court never relied on below. For instance, in Carrasquillo-Sanchez, the government pointed to the 128 rounds of ammunition that the defendant had possessed. I believe it attributed a Kimbrough-type disagreement with the guideline to the district court. And this court said, well, you can't do that. The district court has to provide a sufficiently particularized and compelling reason for deviating from the guideline. So the council, you mentioned Kimbrough. I was going to ask you that question. Do you understand that? I believe it's pages 60, 61, 60, you know, on forward where Judge tries to distinguish the case from Rivera-Rios. You don't think on a Kimbrough level, is it your position? He's not disagreeing adequately with the guidelines to go up, to do an upwards variance. So Kimbrough, that, you know, the principle would not apply here. So I do not believe that Judge Besosa voiced a Kimbrough disagreement in this case. And even if he had, the reasons that he stated were insufficient, Judge Besosa at no point articulated any statistics. The court below never established any benchmark that it would employ. There was no kind of empirical analysis that you would expect when you see a district court voice a Kimbrough type disagreement with a guideline. Didn't he address what modern machine guns, what they do, how they fire. And he did explain that, this is particularly page 60 of the appendix. Didn't he do that in order to justify a sentence? Right. So the district court did say however, he still has to provide adequate reasons for varying. And the reason I answered the question the way that I did, let me just clarify, is because often district courts will point to specific circumstances arising in the district as grounds for an upward variance based on a Kimbrough disagreement. And that never happened in this case. But as a matter of law, I don't think that explanation, that the reference to the Kimbrough disagreement, it's just not empirical in nature. And with all due respect to the district court below, it's based on the opinion of just a judicial officer by itself. Thank you, counsel. Thank you, Your Honor. Thank you, Attorney Perez. Please mute. And Attorney Connor, if you could unmute your audio and video. And introduce yourself on the record to begin. Good morning, and may it please the court, Greg Connor for the government. This court should affirm the sentence that the district court imposed because it provided permissible reasons for imposing a sentence outside of the guideline range. And those reasons included Vegas criminal history. Mr. Connor, why don't you start off by answering Judge Lopez's question about what your responsibilities are to defend the bargain that you negotiated below. Okay, I want to make two points, and we address this in our 28J letter to the court. The Gerardo Nazario case allows the government to defend the district court's judgment and reasoning, even if we were bound by terms of a plea agreement before the district court and could not make those arguments below. And in this case, the sentencing transcript shows that Vega not only had an opportunity to push back on the reasons that the district court gave, Vega also provided his own reasons and his own argument for why he felt a lower sentence was in order. And when the probation officer mentioned in the pre-sentence report that ammunition is a possible aggravating factor, Vega also pushed back on that. So Vega, being able to contest the reasons that the district court gave should refute any notion that he is somehow blindsided or surprised. What do you say about the court's reliance on this misdemeanor offense, aiding and abetting? Okay, the district court refuted the idea that Vega was somehow less culpable because he had a co-defendant, and it was aiding and abetting responsibility. We provided a citation to the Puerto Rico law that makes him just as responsible as an aider and abetter. Counsel, we understand the legal proposition that if you're an aider and abetter, as a matter of law, you are equally culpable as a principal. Nobody's disputing that. But if the trial judge is going to portray this individual as a violent individual, as someone who's violent because he personally participated in dragging an officer away and injuring him, it becomes pretty important to understand factually what happened there. And because of the way this proceeding played out, that was never explored. Until the judge singled that out in his justification for what he had done, there was no appreciation of how important it was to find out exactly what this defendant did in carrying out this offense. That strikes me as a huge difference to just say, well, he's as culpable legally for that offense because he was an aider and abetter. That strikes me as beside the point. Okay, I respectfully disagree with that, and I think the exact wording in the pre-sentence report says, quote, Vega, aiding and abetting with another, used violence and intimidation against the officer by dragging the officer through the road. So that factual description, which was never objected to by Vega, indicates that they were completing this conduct together. And again, I think district courts are allowed to view aiding and abetting offenses, which are relatively common, and view them the same way a district court judge views any offense in a defendant's criminal history. Vega has no authority to support the idea that it's somehow off the table if the conviction was under aiding and abetting liability. And I do want to address the related question by, I think, Judge Lopez, that there's a problem with the government who, in effect, recommended 51 months, which was effectively below the guidelines, that it's somehow a problem to change course on appeal. First of all, it's important to keep in mind the sequence of events in this case. The plea agreement was entered into by the parties relatively early in the proceeding, and both parties were under the incorrect impression that the guideline range was going to be lower. 51 months is smack dab in the middle of 46 to 57 months, which is the guideline range just below what ended up being the range that the district court determined applied. And if you look at page 11 of Vega's reply brief, he seems to acknowledge this, and the same with his motions before the district court. The parties were just under the same impression. So you were put in the position of having to, given where the guidelines came out, you had to argue for downward variance, and you did that. I mean, the government went into that hearing agreeing with the defense that we are arguing for a downward variance in the guidelines. So why does that matter? You knew it before the sentencing hearing that that's what you were going to argue for. The parties in this case show essentially perfect compliance with First Circuit precedent on these issues. First of all, there's no allegation that Vega was somehow tricked into this agreement, but once the parties agreed to this recommendation, the government didn't say this was worthy of a below-the-guidelines case, but it stuck by its agreement to recommend 51 months. There's a one sentence that's all the government says in the entire sentencing hearing. One sentence, we stick by the plea agreement, and that's exactly what the government is supposed to do when it enters into these agreements. Then the case law supports the next phase, which is that the district court judge, as the Article III judge responsible for making the final call, is allowed to disagree with that recommendation, and again, there is no argument by Vega that the probation officer or the district court got the guideline range wrong. So the guideline range that was one higher is correct, and then on appeal, the sort of third stage, the appeal is what Vega is saying somehow has an impropriety, but again, Gerardo Nazario says that the government's responsibility shifts to defend the district court judgment on appeal, and if that wasn't the case, you wouldn't have adversarial briefing in sentencing decisions, and Vega's only distinction from Gerardo Nazario is that that case can't apply because it was a child abuse case, but if you look at, well, first of all, that's ridiculous. There's no part of that holding that's dependent on the type of offense at issue, and second of all, if you look at the Hernandez-Ramos case, which is also in our brief, this court has said the same thing. It's said it many times. The government is permitted to defend the district court's reasoning on appeal, and I want to get to those reasons because I think that is the key issue in this case, and I'll respectfully disagree with the suggestion that Judge Lopez made earlier. Yes, Vega's incident of dragging and injuring the police officer is one of the factors, but there are additional factors that were at issue, and those included the dismiss counts in the indictment, the test firing of the machine gun, the additional ammunition and magazines that Vega possessed, and the lack of controls. With respect to the dismiss counts, why isn't the defense correct that those are already accounted for by the guidelines range? The obliteration became an enhancement. The fact that he was previously convicted, that affected where the guidelines range started. Those are already accounted for. Isn't that correct? No, Your Honor, and respectfully, the dismiss counts in the indictment add to the idiosyncrasies of this case in several ways. I'll try and go in order. The first is, just at a basic level, there was more criminal exposure if he pleaded guilty to those. There would be a higher statutory maximum. Second of all, when you look at the firearm cases that we provide a lot in our brief, Vega essentially provides three, and if you take step back and look at them, all of his cases, the second Rivera-Burrios and the follow-on cases, they're first-time offenders. So as much as Rivera-Burrios said that the 37 rounds in that case was consistent with machine gun possession, there's no amount of ammunition that's consistent with Vega possessing a machine gun because it was illegal. He was a felon, just like the defendant in Gonzalez-Flores, where this court said that the 43 rounds of ammunition were something that the district court was entitled to base the variant sentence on because they were not contemplated by the guidelines. Same in Garcia-Mojica, footnote seven. This court said the starting at page 34 of our brief, there was a focus on the amount of ammunition involved, that the basic offense already contemplated the possession of those quantities of ammunition. Didn't we say that explicitly in Rodriguez-Burrios? Something to that effect, but a few points. First of all, that's not the way variance cases typically discuss whether a variance is justified. The other cases discuss whether or not a factor is contemplated by the guidelines, not whether it's consistent with the offense. But again, that's a first-time offender. He had lower amounts of ammunition, and I have provided this court with dozens of cases where felons possessing additional ammunition is a permissible basis for a variant sentence. I just want to briefly add that even though the district court expresses what Rivera-Burrios cautioned against, which are general considerations that are universal in application, the district court judge in this case also provided a specific consideration of the specific firearm that Vega possessed. And the idea is that a pistol that is not made to fire automatically is less controllable and more of a risk to bystanders when it's altered to fire automatically. There are cases coming up through the pipeline where there's trial testimony from ATF to that effect, but the district court does address this at some length, and Vega never objects to that. So the idea that modified pistols are less controllable, one, this court would review on... I'm not sure you can object to a judge's reasoning. You object to the judge's ultimate decision. No, Vega did object to his reasoning below, and again, he seems to acknowledge this point by saying that other firearms are more accurate, and that is exactly the point that Judge Bezosa was making, that these modified pistols, which have an uncontrollable spray of bullets, pose more of a risk to bystanders. I do not understand that comparison, frankly. I mean, so it's not as bad to have, and I don't know the specifics of this, but to have an assault weapon that could accurately, in seconds, fire off rounds that would kill 150 people. That somehow is better than having a modified handgun that, because it's less accurate, may kill people who were never intended to be shot in a smaller number. I just don't understand how that comparison makes any sense at all. Why is this more dangerous than an assault weapon that can kill huge numbers of people with complete accuracy? I don't understand that. Okay, well, I think the answer comes from Section 3553A, which requires a district court to consider the seriousness of the offense and protection of the public, and when the district court... It has to be a plausible distinction. I agree with your honor that a firearm that's more accurate would be potentially deadlier to the target, but Judge Bezosa's concern was that with an indiscriminate spray of bullets, that the bystanders would be more at risk, and again, that is something that Gonzalez-Flores seems to address. Gonzalez-Flores said that the district court was entitled to base a variance both on the destructive nature of the gun and the additional ammunition, which in that case was a lower amount of ammunition than in this case. Counsel, one final question, if I might. Now, we have case law that says that if... There's a developed argument on mitigation as there was here, for sure, but the judge says absolutely nothing about it, doesn't address it with one word, and that imposes a significantly upward variance beyond the agreed upon sentence, beyond the guidelines, that that in itself is an error, because there is a greater burden of explanation when you vary upwardly, as was done here. So, you have a very specific developed mitigation argument was made, ignored, and then you have this upward variance, and not a word is said about that. Isn't that error in itself? Isn't that a significant procedural error that would require us to send this back? With respect, I'm not sure what mitigation argument you're referring to, but this court has said in the past that when a defense... The answer to your question is no, and the reason is this court has said in many cases that when a district court is provided a mitigating argument, but does not address it in its explanation, if its explanation is still sufficient, it is not error to not explicitly explain why it's rejecting the defendant's argument, and that's not... Any other questions? Thank you, counsel. Thank you. Attorney Conner, please mute your audio and video at this time. Attorney Perez, you have a two-minute rebuttal. Please reintroduce yourself on the record to begin. Good morning, Attorney Franco Perez. May it please the court? Yes. Your Honor, if I could just make four quick brief points. First, the government says that Jurado Nazario, that the only aspect of Jurado Nazario that we distinguish is that that was a child abuse case, but as our response to the government's 28-J letter makes clear, what Jurado Nazario actually states is that the government is allowed to defend a lawful sentence, not that it can provide additional factual assertions on appeal that were not developed below. The second point that I just wanted to make is on the contention that Judge Bezos made that there are other firearms or other firearms that are more controllable than the weapon that Mr. Vega possessed here. However, I think that the guideline already contemplates those factors, so the fact that it's... That compared to rifles, which can arguably fire more rounds of ammunition, and this one is somehow less controlling, I think that's a factor that the court could consider in perhaps imposing a middle end of the guideline sentence or higher end, but not for varying. And just one final point on the dismiss counts. The district court, in relying on those dismiss counts, characterizes them as relevant conduct, but relevant conduct should only be aggravating when not accounted for in the guidelines or when the court spells out a case-specific reason why it's aggravating. And you can see that in different cases from this court, such as Pagan-Walker, where the defendant was charged with felon possession and possession of a machine gun, but was ultimately convicted just of 922G, so the guideline did not account for the fact that it was a chipped pistol. The same goes... Or a similar situation arose in Ramirez-Romero, where the defendant possessed multiple guns and his status as a drug user was not accounted for in the guideline. That's a very different situation. Okay, were you finished with your sentence? Yes, Your Honor, if I could just briefly wrap up. Yes. So for all these reasons, we would ask the court to vacate the judgment of the district court and remand the case for resentencing before a different district judge. Let me ask you, why a different district judge? Well, it seems... So for several reasons, I guess the most glaring one is that there is no way that we will be able, that Mr. Vega will be able to get specific performance from the government based on all these additional theories of aggravation that it's now presented. But that's not the judge, that's the government in your contention. Why can't Judge Bessosa, if this case were to be remanded, are you suggesting he would not follow the circuit instructions? I know, like myself, when I was reversed back in my day, you know, I would follow the circuit instructions. Why can't he do this correctly if the court were to remand? So I'm not saying that Judge Bessosa wouldn't be able to follow the instructions, I would just be saying that given Judge Bessosa's previous statements on the record about the dangers of machine guns, it may appear to an outside observer that he's already made up his mind with regard to what sentence is adequate here. But in the alternative, Judge Helpe, we would ask simply that the case be sent back for a within-guideline sentence with that instruction. Thank you. Thank you, Your Honors. Thank you. That concludes arguments in this case. Attorney Perez and Attorney Connor, you should disconnect from the hearing at this time.